**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

**SECURITIES AND EXCHANGE COMMISSION,**

                         **Plaintiff,**

**Vs.**

**TAINO ADRIAN LOPEZ,**
**ALEXANDER FARHANG MEHR,**
**MAYA ROSE BURKENROAD,**

                         **Defendants,**

_____/

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF
## AND DEMAND FOR JURY TRIAL

Plaintiff Securities and Exchange Commission ("Commission") alleges:

**I.      INTRODUCTION**

1.      From approximately April 2020 through November 2022 (the "Relevant Period"), Defendants Taino Lopez and Alexander Mehr, co-founders of Retail Ecommerce Ventures LLC ("REV"), and REV's Chief Operating Officer ("COO"), Maya Burkenroad, raised approximately $112 million combined from hundreds of investors through fraudulent offerings from retail investors across the United States through the fraudulent offer and sale of securities issued by eight REV portfolio companies managed by REV and which Defendants formed and controlled.

2.     REV's primary business was purchasing distressed retail companies with name brand recognition and converting them into e-commerce only businesses.  The securities offerings at issue involved offerings by REV and eight REV portfolio companies:  Brahms LLC ("Brahms"), Dress Barn Online, Inc. ("Dress Barn"), Franklin Mint Online, LLC ("Franklin Mint"), Linens 'N Things Online, Inc. ("Lines 'N Things"), Modell's Sporting Goods Online, Inc. ("Modell's"), Pier 1 Imports Online, Inc. ("Pier 1"), RadioShack Online, LLC ("RadioShack") and Stein Mart Online, Inc. ("Stein Mart") (collectively referred to as the "REV Retailer Brands").  REV served as the holding company and manager of the REV Retailer Brands.

3.     During the Relevant Period, Defendants sold securities in the form of unsecured notes promising up to 25% annualized returns as well as equity (membership units) with a monthly preferential dividend as high as 2.083%. The purported purpose of the offerings was to raise capital to acquire the predecessor to each particular REV Retailer Brand and to raise additional operating capital for said REV Retailer Brand.

4.     In connection with these offerings, Lopez and Mehr made material misrepresentations and omitted to state material facts necessary to make statements made, in light of the circumstances they were made, not misleading, about the success and profitability of REV's business model and the REV

Retailer Brands.  In at least one promotional video publicly available on the internet, Lopez touted REV's approach as "one of the best strategies you can invest in."  Defendants further assured investors that while other businesses may be struggling, their portfolio companies were "on fire" and that "cash flow is strong."

5.     Defendants also assured investors, both orally and in written offering materials, that funds raised for a specific portfolio company would be used for that specific company, and that REV and the REV Retailer Brands have never failed to pay a single investor.  Contrary to these representations, while some of the REV Retailer Brands generated revenue, none generated any profits. Consequently, in order to pay interest, dividends and maturing note payments, Defendants resorted to using a combination of loans from outside lenders, merchant cash advances, money raised from new and existing investors, and transfers from other portfolio companies to cover obligations. At least $5.9 million of the returns distributed to investors were, in reality, Ponzi-like payments funded by other investors.

6.     In addition, Defendants misappropriated approximately $16.1 million in investor funds, which was diverted for Defendants Lopez's and Mehr's personal use.

7.      Through their conduct alleged in this Complaint, Defendants have violated Sections 17(a)(1) and 17(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(1) and (3)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c)]; Defendants Lopez and Mehr violated, and Defendant Burkenroad aided and abetted Lopez and Mehr's violations, of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)].

8.      Unless enjoined, Defendants are reasonably likely to engage in future violations of the federal securities laws.  Among other relief, the SEC seeks against Defendants permanent injunctions, officer and director bars, civil monetary penalties and, as against Defendants Lopez and Mehr, disgorgement with prejudgment interest.

## II.      DEFENDANTS AND RELEVANT ENTITIES

### A.      Defendants

9.      **Lopez**, 49, resides in Rio Grande, Puerto Rico.  Lopez was the co-founder, co-owner, and Chief Executive Officer of REV from November 2019 to March 2024.  Lopez also owned, directly or indirectly, minority interests in each of the REV Retailer Brands that issued unsecured notes or equity to investors.

10.     **Mehr,** 46, resides in San Juan, Puerto Rico.  Mehr was the co-founder, co-owner, and President of REV from July 2020 to April 2023.  Mehr also owned, directly or indirectly, minority interests in each of the REV Retailer Brands that issued unsecured notes and/or equity to investors.

11.     **Burkenroad,** 38, resides in Swoope, Virginia and is Lopez's cousin. From 2020 to March 2024, Burkenroad served as President, and later COO, of REV.  From 2020 to 2022, Burkenroad acted in a management role for two of the REV Retailer Brands, Dress Barn and Pier 1 Imports.

### B.     REV and the REV Retailer Brands

12.     **REV** is an insolvent Delaware limited liability company with its principal place of business in Miami Beach, Florida.  Defendants Lopez and Mehr are the majority owners of REV, which served as the manager of the REV Retailer Brands.  REV raised approximately $112 million from investors by issuing unsecured notes and equity in REV.  On December 29, 2023, the assets of REV and the REV Retailer Brands were foreclosed on by a group of secured REV noteholders and the assets were reassigned to a new, unrelated company, Omni Retail Enterprises, LLC.

13.     **Brahms** is an insolvent Puerto Rico limited liability company with its principal place of business in Miami Beach, Florida.  Brahms is a software company whose applications are designed to operate as ecommerce platforms to

assist ecommerce retailers in managing and operating their businesses.  Brahms was majority owned and managed by REV.  The Defendants raised approximately $12.9 million for Brahms from investors.

14.     **Dress Barn** is an insolvent Delaware company with its principal place of business in Miami Beach, Florida.  Dress Barn is an online women's clothing and accessories retailer and was majority owned and managed by REV. The Defendants raised approximately $11.4 million for Dress Barn from investors.

15.     **Franklin Mint** is an insolvent Delaware limited liability company with its principal place of business in Miami Beach, Florida.  Franklin Mint is a retailer of commemorative and collectable items and was majority owned and managed by REV.  The Defendants raised approximately $5.9 million for Franklin Mint from investors.

16.     **Linen 'N Things** is an insolvent Delaware company with its principal place of business in Miami Beach, Florida.  Linens 'N Things is a retailer of textiles, housewares, and decorative accessories and was majority owned and managed by REV.  The Defendants raised approximately $1.2 million for Linen 'N Things from investors.

17.     **Modell's** is an insolvent Delaware company with its principal place of business in Miami Beach, Florida.  Modell's is a sporting goods retailer and was

majority owned and managed by REV.  The Defendants raised approximately $8.7 million for Modell's from investors.

18.    **Pier 1** is an insolvent Delaware company with its principal place of business in Miami Beach, Florida.  Pier 1 is an online retailer and former Fort Worth, Texas-based retail chain specializing in imported home furnishings including furniture, table-top items, decorative accessories, and seasonal decor. Pier 1 was majority owned and managed by REV.  The Defendants raised approximately $36.7 million for Pier 1 from investors.  Pier 1 Imports, Inc., the predecessor company to Pier 1 Imports Online, Inc., was listed on the New York Stock Exchange ("NYSE") until the Defendants acquired it.

19.    **RadioShack** is an insolvent Delaware limited liability company with its principal place of business in Miami Beach, Florida.  RadioShack is an electronics retailer and was majority owned and managed by REV.  The Defendants raised approximately $21.1 million for RadioShack from investors. RadioShack Corporation, the predecessor company to RadioShack Online, LLC, was listed on the NYSE until the Defendants acquired it.

20.    **Stein Mart** is an insolvent Delaware company with its principal place of business in Miami Beach, Florida.  Stein Mart is a discount retailer of clothing, shoes, housewares, décor, and accessories and was majority owned and

managed by REV.  The Defendants raised approximately $14.2 million for Stein Mart from investors.

### III.   JURISDICTION AND VENUE

21.    The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)]; and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

22.    The Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida, because many of the Defendants' acts and transactions constituting violations of the Securities Act and the Exchange Act occurred in the Southern District of Florida.  In addition, the principal place of business of REV and the REV Retailer Brands, which were operated by the Defendants, was in the Southern District of Florida.

23.    In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

IV.   <u>FACTS</u>

A.   <u>Defendants' Securities Offerings</u>

24.     REV's primary business was identifying distressed companies with name brand recognition, raising funds from investors in order to purchase the brand's assets, and converting them into successful e-commerce-only businesses.   In one promotional video publicly available on the internet, Defendant Lopez touted REV's business approach as "one of the best strategies you can invest in."

25.     During the Relevant Period, Defendants raised more than $230 million from at least 660 investors nationwide, including raising approximately $112 million through a series of fraudulent securities offerings in the eight REV Retailer Brands.

26.     The offerings were for the purpose of raising capital to purchase the distressed companies as well as fund company operations.   Defendants told investors that they could invest in REV directly, or in any of the portfolio companies, or both.   Defendants solicited investors and prospective investors primarily through REV's website and a series of online social media marketing campaigns across Twitter, Facebook, and YouTube.   Additionally, Defendants Lopez and Mehr held Zoom calls with existing and prospective investors twice

a week and in-person events approximately twice a year in places like Puerto Rico, Virginia, and Las Vegas, Nevada.

27.     REV and the portfolio companies, including REV's Retailer Brands, at the direction of Defendants, offered and sold securities to investors in the form of unsecured notes and/or equity (membership units).

28.     For each type of offering, investors typically first entered into a letter of intent ("LOI") followed by a securities purchase agreement.  These LOIs and agreements offered unsecured note investors annualized returns as high as 25% for terms ranging from 1 to 7 years, and promised note holders a full return of their investment principal upon maturity.  Equity investors were offered preferential monthly dividends up to 2.083%.

29.     The following lists the issuer, dates, type(s) of securities issued, and promised rates of return for the eight REV Retailer Brands offerings:

| Issuer | Offering Dates | Securities Offered | Monthly Dividends (Equity) | Annual Interests (1-7 Yr. Note) |
|---|---|---|---|---|
| Brahms | 2021 - 2022 | Equity and/or Unsecured Note | 1.5% | 13.5% to 25% |
| Dress Barn | 2020 | Equity and/or Unsecured Note | 1.5% | 12% |
| Franklin Mint | 2020 | Equity and/or Unsecured Note | 1.5% | 18% |
| Linens 'N Things | 2020 | Equity and/or Unsecured Note | 1% | 12% |
| Modell's | 2020 | Equity and/or Unsecured Note | 2.083% | 21% to 25% |

10

| Pier 1 Imports | 2021 | Equity and/or Unsecured Note | 1% | 20% to 22% |
| --- | --- | --- | --- | --- |
| RadioShack | 2021- 2022 | Unsecured Note | N/A | 10% to 20% |
| Stein Mart | 2021 | Equity and/or Unsecured Note | 1% | 20% |

30.     According to at least one investor, Defendant Lopez claimed that the portfolio companies were able to pay such high returns because REV "acquir[ed] the businesses so cheaply" and most of the employees were overseas, leading to reduced costs.

31.     Defendants Lopez and Mehr told investors that they could invest in REV, the holding company, and have the indirect exposure to all of the portfolio companies, or they could invest directly in one or more of REV's portfolio companies, including any of the eight REV Retailer Brands.  According to a REV sales representative, Defendant Lopez told investors: "[y]our money is in one particular entity[.]"

32.     Defendants sent interested investors LOIs outlining the terms and conditions of the respective offer, including the investment amount and where to wire investment funds.  Each REV Retailer Brand had its own distinct set of offering documents.

33.     The LOIs used in each company's offering were substantially the same and all the LOIs contained the same "use of proceeds" language providing that investor proceeds were to be used "for any general business purposes of

the Company and its affiliates." In the offering documents, "Company" was defined as the particular entity conducting the offering (e.g., Dress Barn).

34.     The offering documents also informed potential investors that proceeds from the offerings were for the purpose of funding the acquisition of or working capital for the specific Company. In return, investors would receive monthly interest or preferred dividend payments from the revenues of said Company.

35.     Based on the language of the Use of Proceeds provision in the LOIs for each REV Retailer Brand and the oral representations of Defendants Lopez and Mehr, investors understood that investments in the portfolio companies were to be used for that specific portfolio company, and that investors who desired a broader exposure to REV's portfolio of companies had the option to invest in directly in REV.

36.     After investors sent in their investment capital, investors received an unsecured note or a securities purchase agreement for execution. Defendants Lopez, Mehr, or Burkenroad countersigned these investor notes and agreements.

37.     The unsecured notes and equity (membership units) Defendants offered and sold are securities within the meaning of the Securities Act and the Exchange Act. The unsecured notes and equity agreements are investment

contracts under *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).  With respect to these investments, there was (a) an investment of money; (b) in a common enterprise; (c) based on the expectation of profits to be derived from the entrepreneurial or managerial efforts of others.  Investors looked solely to Defendants, REV and the REV Retailer Brands to produce returns.

38.    The unsecured notes are also securities.  Defendants characterized the notes as "investments" when marketing them to investors – with expectations of receiving interest payments generated from the company using their money to fund its business activities.

**B.    <u>Defendants Lopez's and Mehr's Misstatements to Investors</u>**

39.    Defendants Lopez and Mehr, and other REV representatives working at their direction, made misstatements to investors concerning the success and profitability of REV, and the REV Retailer Brands, and the safety of investors' investments.  Lopez and Mehr also misrepresented Burkenroad's experience on REV's website.

*(i)    Material Misrepresentations About the Success and Profitability of REV and REV Retailer Brands*

40.    During weekly investor Zoom calls and at in-person meetings with investors, Defendants Lopez and Mehr – who did most of the talking during the Zoom calls and at in-person meetings – pitched new investment opportunities by touting the purported success of the previous offerings.  They claimed that

REV and the REV Retailer Brands were performing well, without providing any specific financial information about the companies or disclosing any concerns about any of the companies' performance.

41.     Statements about the supposed success of the REV Retailer Brands allowed Defendants to solicit additional investors.  For example, the purported success of Dress Barn – one the REV's earliest acquisitions – served as a catalyst to raise funds for other acquisitions as Defendants misleadingly touted its success.

42.     Following the Zoom calls, Defendant Lopez and Mehr sent email updates to all existing investors recapping the calls.   In one email recap Defendant Lopez sent to investors on February 18, 2021, he claimed that Dress Barn and Stein Mart were "on fire" and "cash flow is strong," that "there are plenty of public companies operating at heavy losses" but that's "not us," and that REV had "brands with a positive EBITDA."

43.     Contrary to Defendant Lopez's February 18, 2021 email, the internal financial statements for Dress Barn, which were never shared with investors despite investors' repeated requests, reveal that Defendant Lopez's statements that the company was "cash flow strong" and not operating at heavy losses were false and misleading because Dress Barn experienced losses of nearly $13.7 million and $10.7 million for 2020 and 2021, respectively.  Similarly,

the internal financial statements for Stein Mart show that the company had net losses of nearly $1.7 million and $5.7 million for 2020 and 2021, respectively.

44.     Defendants Lopez and Mehr also boasted to investors that REV and the REV Retailer Brands never missed a payment to a single investor. In particular, one investor recalled a May 2022 investor Zoom call where Defendant Lopez stated that "REV never missed a cash payment or preferred payment [since inception]."

45.     Defendants Lopez's and Mehr's claims about never missing a payment to investors were also false. From at least early 2022, investors had already complained to Defendants Lopez, Mehr, Burkenroad and other REV representatives that they had not received their interest payments.

46.     In truth, the Defendants were aware that neither REV nor any of the REV Retailer Brands were generating sufficient revenue to cover costs yet failed to disclose to investors the true financial condition of the companies until mid-December 2022.

47.     According to REV's consolidated income statement for the preceding twelve-month period ending October 31, 2022, REV, the REV Retailer Brands, and the other REV portfolio companies incurred monthly net losses ranging from $3.8 million to $12 million.

15

48.     Consequently, in order to pay interest, dividends, and maturing note payments to existing investors, Defendants resorted to using a combination of loans from outside lenders, merchant cash advances, money raised from new and existing investors, and transfers from other portfolio companies to cover obligations.  Neither Defendants, nor the offering materials, disclosed to investors that payments made to investors came from other investors' money.

49.     Defendants knew that REV and the REV Retailer Brands were in financial trouble.  During several internal REV meetings in mid-2022, Defendants Lopez and Mehr discussed the overall financial situation with Defendant Burkenroad, as well as the need to raise additional capital, and having to prioritize vendor payments and "triage" investor payments.

50.     Despite the financial struggles of the REV Retailer Brands, the Defendants continued to promote new offerings by touting the purported success of the REV Retailer Brands.

### (ii)     The November 2022 Conference

51.     In November 2022, Defendants hosted an investor conference in Las Vegas.  During this conference, Lopez and Mehr promoted an offering in certain REV Retailer Brands, including Brahms.  Despite making statements about the financial success of their business strategy, Defendants failed to

disclose the ongoing REV Retailer Brands' financial struggles. Defendants also failed to disclose that REV and the Retailer Brands had, in fact, missed some investor payments.

52.     Aware of REV Retailer Brands' struggles, Defendants Lopez and Mehr solicited investment via email immediately following the November 2022 Las Vegas conference.

53.     Specifically, Defendant Mehr continued to solicit investors in an email urging:

> "[w]e're going all in on REV and we want you to join us at the table. We've already been dealt a pretty strong hand with all the ace brands we've acquired over the last couple [sic] years and we're not ready to cash out yet. If you don't want to look like a joker, then the time to get in on REV is now… [d]on't call our bluff, this deal folds this Friday, November 11th so reach out to [our investor relations team now]."

54.      However, immediately after the conference and post-conference emails, Defendants stopped making investor payments and hosting investor calls altogether.

55.     Then, on December 15th, after not hosting an investor call for several weeks, Defendant Lopez disclosed, for the first time, to all investors during a Zoom call that REV, the REV Retailer Brands, and the other REV portfolio companies were in financial trouble, they were unable to make investor payments, and that REV's management was exploring restructuring or selling one or more of the portfolio companies.

### (iii)   *Misrepresentations About Burkenroad's Background*

56.    REV maintained a public website, available to investors and prospective investors, which was controlled by Defendants Lopez and Mehr. Among other things, the website listed the individuals associated with REV that formed its leadership team, describing and their backgrounds and experience. However, Defendants Lopez and Mehr misrepresented the experience of a key member of REV's leadership team on this website.

57.    Specifically, Defendant Burkenroad, who served as REV's President, COO, Chief Risk Officer, and who also served in an executive capacity for Pier 1 and Dress Barn, was described on the website as REV's President and as having "over 10 years of experience managing multi-million-dollar companies."

58.    Contrary to the information stated on REV's website, in the years prior to working as REV's President and COO, Defendant Burkenroad worked as a substitute preschool teacher, a promoter at a radio station, as an assistant to her cousin Lopez in his online education company.  Defendant Burkenroad had no identifiable experience managing any company.

**C.    Defendants' Misuse and Misappropriation of Investor Funds**

59.    Investor funds were improperly used by Defendants to enrich Defendants Lopez and Mehr.

60.     Defendants Lopez and Mehr represented to investors and prospective investors, orally and in offering documents, that the proceeds raised from the offerings would be used for general business purposes of the "Company."  The offering documents distributed to investors further defined the "Company" as the particular entity conducting the offering (e.g. Pier 1).

61.     In return, investors were told that they would receive monthly interest or dividend payments from the revenues generated by the specific "Company", as well as a return of their principal when their unsecured notes matured.

62.     Contrary to these representations, Defendants improperly commingled investor funds in order to perpetuate the illusion of REV's and the REV Retailer Brands' financial success, including making interest or dividend payments to investors.  Defendants Lopez and Mehr also misappropriated at least $16.1 million for themselves.

       *(i)      Commingling Funds Between REV and REV Retailer Brands*

63.     Defendants maintained separate bank accounts for REV and each of the REV Retailer Brands, and Defendants Lopez, Mehr, and Burkenroad were signatories on all REV and REV Retailer Brands bank accounts.

64.     However, Defendants misused investor funds to cover shortfalls of other portfolio companies.  Investor funds initially deposited into individual

portfolio company bank accounts were often transferred to REV's bank accounts and commingled with investor funds from the other portfolio companies. The Defendants approved these bank transfers.

65.   REV's head bookkeeper prepared a weekly spreadsheet that he shared with Defendant Burkenroad. This spreadsheet detailed bank account balances, expenses, other cash outflows including investor payments owed and shortfalls for each of the companies. Defendant Burkenroad shared this information with Defendants Lopez and Mehr and the group would determine from where to pull funds to cover any shortfalls.

66.   REV's head bookkeeper then executed transfers based on the instructions relayed to him by Defendant Burkenroad. For example, when a large number of investor notes were coming due in 2022, Defendant Burkenroad instructed the head bookkeeper how to cover the shortfalls by directing him what amounts to take from which bank accounts.

67.   Although at times the REV Retailer Brands were generating some revenue through product sales, none of the companies were generating profits. And while REV purportedly provided management services to the REV Retailer Brands, it never collected management fees, at least not according to its books and records. Accordingly, REV's only source of cash was capital raised from its own investors.

68. Defendants misused the REV Retailer Brands investor funds through direct and indirect transfers. At times, rather than shift money directly between REV Retailer Brands, the money first went to REV and then REV would send funds to the other REV Retailer Brands. This practice enabled the Defendants to circumvent the terms of the REV Retailer Brands' investment agreements, which limited the use of the proceeds to that specific portfolio company.

69. For example, on one occasion, the Defendants transferred $1.41 million from RadioShack's bank account to REV's bank account on February 4, 2022. That same day, REV made five transfers to five different REV Retailer Brands' totaling an amount of just over $1 million: Pier 1 ($615,000), Modell's ($185,000), Linens 'N Things ($10,000), Franklin Mint ($16,000) and Dress Barn ($225,000).

70. At other times, investor funds were also transferred directly between portfolio companies to cover shortfalls of other portfolio companies. For example, in November 2020, $1.7 million in investor proceeds was transferred from a RadioShack bank account directly to a Stein Mart bank account. In total, the Defendants transferred at least $5.9 million in investor proceeds directly between portfolio companies, contrary to the written and oral representations made to investors about the use of proceeds.

### (ii)     *Ponzi-like Payments to Investors*

71.     Since Defendants promised investors high rates of return but were cash flow negative and unable to generate sufficient revenues from REV's touted business model to cover expenses, Defendants needed new investor money to make interest, dividend and principal payments to existing investors. But as the number of companies and investors grew, so did the amount of promised returns and principal owed to investors.

72.     In order to maintain the appearance of a successful business, Defendants started operating a Ponzi scheme by making payments of promised returns to existing investors using either new investors' funds or investor funds from other REV Retailer Brands.

73.     From July 2022 to October 2022 alone, Defendants directed at least $5.9 million in new investors funds be used to pay returns to earlier investors in classic Ponzi-like fashion.

74.     Defendants Lopez, Mehr, and Burkenroad, together, approved these payments to earlier investors.

75.     Ultimately, REV and the REV Retailer Brands began making late payments to investors at least as early as August 2022 and, by at least September 2022, began missing payments en masse.

### (iii)   *Misappropriation of Investor Funds*

76.     Defendants Lopez and Mehr misappropriated approximately $12.5 million and $3.6 million, respectively, by diverting investor funds to personal accounts owned or controlled by them for no apparent business purpose.

77.     For example, Defendant Lopez received the majority of his misappropriated funds in transfers to TAL Promotions LLC, a company wholly owned by him.  TAL Promotions has no affiliation with REV or the REV Retailer Brands and provided no services to either.

## V.     CLAIMS FOR RELIEF

### COUNT I
### Fraud in Violation of Section 17(a)(1) of the Securities Act
### (All Defendants)

78.     The Commission repeats and realleges paragraphs 1 through 77 of this Complaint.

79.     Starting no later than April 2020 and continuing through November 2022, Defendants Lopez, Mehr, and Burkenroad, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, knowingly or recklessly employed devices, schemes, or artifices to defraud.

23

80.     By reason of the foregoing, Defendants Lopez, Mehr, and Burkenroad have violated and, unless enjoined, are reasonably likely to again violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II
### Fraud in Violation of Section 17(a)(2) of the Securities Act
**(Defendants Lopez and Mehr)**

81.     The Commission repeats and realleges paragraphs 1 through 77 of this Complaint.

82.     Starting no later than April 2020 and continuing through November 2022, Defendants Lopez and Mehr, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

83.     By reason of the foregoing, Defendants Lopez and Mehr have violated and, unless enjoined, are reasonably likely to again violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## COUNT III
## Fraud in Violation of Section 17(a)(3) of the Securities Act
### (All Defendants)

84.     The Commission repeats and realleges paragraphs 1 through 77 of this Complaint.

85.     Starting no later than April 2020 and continuing through November 2022, Defendants Lopez, Mehr, and Burkenroad, in the offer or sale of securities by use of means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, or courses of business which operated or would have operated as a fraud or deceit upon the purchasers.

86.     By reason of the foregoing, Defendants Lopez, Mehr and Burkenroad have violated, and unless enjoined, are reasonably likely to again violate Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT IV
## Fraud in Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act
### (All Defendants)

87.     The Commission repeats and realleges paragraphs 1 through 77 of this Complaint.

88.     Starting no later than April 2020 and continuing through November 2022, Defendants Lopez, Mehr and Burkenroad, directly and indirectly, by use of any means or instrumentality of interstate commerce, and of the mails in

connection with the purchase or sale of securities, knowingly or recklessly employed devices, schemes, or artifices to defraud.

89.     By reason of the foregoing, Defendants Lopez, Mehr and Burkenroad violated and, unless enjoined, are reasonably likely to again violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) [ 17 C.F.R. § 240.10b-5(a)].

### COUNT V
### Fraud in Violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act
### (Defendants Lopez and Mehr)

90.     The Commission repeats and realleges paragraphs 1 through 77 of this Complaint.

91.     Starting no later than April 2020 and continuing through November 2022, Defendants Lopez and Mehr, directly and indirectly, by use of the means or instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

92.     By reason of the foregoing, Defendants Lopez and Mehr have violated and, unless enjoined, are reasonably likely to again violate Section 10(b)

of the Exchange Act [ 15 U.S.C. § 78j(b)] and Rule 10b-5(b) [ 17 C.F.R. § 240.10b-5(b)].

### COUNT VI
### Fraud in Violation of Section 10(b) and Rule 10b-5(c) of the Exchange Act
**(All Defendants)**

93.     The Commission repeats and realleges paragraphs 1 through 77 of this Complaint.

94.     Starting no later than April 2020 and continuing through November 2022, Defendants Lopez, Mehr, and Burkenroad, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly, engaged in acts, practices, and courses of business which have operated as a fraud upon the purchasers of such securities.

95.     By reason of the foregoing, Defendants Lopez, Mehr and Burkenroad have violated, and unless enjoined, are reasonably likely to again violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)].

### COUNT VII
### Aiding and Abetting Defendants Lopez's and Mehr's
### Violations of Section 17(a)(2)
**(Defendant Burkenroad)**

96.     The Commission repeats and realleges paragraphs 1 through 77 of this Complaint.

97.     Starting no later than April 2020 and continuing through November 2022, Defendant Burkenroad knowingly or recklessly provided substantial assistance to Defendants Lopez and Mehr, who, directly or indirectly, singly or in concert with others, in connection with the offer or sale of securities, used the means or instruments of transportation or communication in interstate commerce, or of the mails, directly or indirectly, to negligently obtain money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

98.     By reason of the foregoing, Defendant Burkenroad aided and abetted and, unless restrained and enjoined, is reasonably likely to again aid and abet violations of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

### COUNT VIII
### Aiding and Abetting Defendants Lopez's and Mehr's
### Violation of Section 10(b) and Rule 10b-5(b)
### (Defendant Burkenroad)

99.     The Commission repeats and realleges paragraphs 1 through 77 of this Complaint.

100.     Starting no later than April 2020 and continuing through November 2022, Defendant Burkenroad knowingly or recklessly provided substantial assistance to Defendants Lopez and Mehr, who, directly and

indirectly, singly or in concert with others, with scienter, used the means or instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly, made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

101.    By reason of the foregoing, Defendant Burkenroad aided and abetted and, unless enjoined, is reasonably likely to again aid and abet violations of Section 10(b) of the Exchange Act, [15 U.S.C. § 78j(b)], and Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court find Defendants committed the violations of the federal securities laws alleged herein, and:

### A.

### Permanent Injunction

Issue a Permanent Injunction restraining and enjoining Defendants, any officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15

U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder by committing

or engaging in specified actions or activities relevant to such violation.

**B.**

**Disgorgement and Prejudgment Interest**

Issue an Order directing Defendants Lopez and Mehr to disgorge all ill-

gotten gains, including prejudgment interest thereon, resulting from the acts

and courses of conduct alleged in this Complaint.

**C.**

**Civil Penalty**

Issue an Order directing each Defendant to pay a civil money penalty

pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section

21(d) of the Exchange Act, [[15 U.S.C. § 78u(d)].

**D.**

**Officer and Director Bar**

Issue an Order  pursuant to Section 20(e) of the Securities Act [15 U.S.C.

§ 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]

permanently barring each Defendant from acting as an officer or director of an

issuer whose securities are registered with the Commission pursuant to Section

12 of the Exchange Act or that files reports with the Commission pursuant to

Section 15(d) of the Exchange Act.

**E.**

**Further Relief**

Grant such other and further relief as may be necessary and appropriate.

**F.**

**Retention of Jurisdiction**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action and the Defendants in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

**DEMAND FOR JURY TRIAL**

The Commission hereby demands a trial by jury in this case.

September 23, 2025                    Respectfully submitted,

                    By:  s/ Alise Johnson
                         Alise Johnson
                         Senior Trial Counsel
                         Florida Bar No. 0003270
                         Direct Dial: (305) 982-6385
                         E-mail:  johnsonali@sec.gov

                         Attorneys for Plaintiff
                         **U.S. Securities and Exchange Commission**
                         801 Brickell Avenue, Suite 1950
                         Miami, Florida 33131
                         Telephone: (305) 982-6300
                         Facsimile: (305) 536-4154

31